# EXHIBIT A

# State Court Pleadings

ELECTRONICALLY FILED - 2023 Jan 10 11:08 AM - EDGEFIELD - COMMON PLEAS - CASE#2023CP1900010

| | |
|---|---|
| STATE OF SOUTH CAROLINA | ) IN THE COURT OF COMMON PLEAS |
| | ) |
| COUNTY OF EDGEFIELD | ) C/A NO.: |
| | ) |
| Titan Farms, LLC, Carr Farms, Inc., Titan Peach Farms, Inc., Chalmers Carr, and Lori Anne Carr, | ) |
| | ) |
| | ) |
| | ) |
| Plaintiffs, | ) |
| | ) **SUMMONS** |
| vs. | ) *(Jury Trial Demanded)* |
| | ) |
| PGIM Real Estate Finance, LLC, | ) |
| | ) |
| Defendant. | ) |
| | ) |

TO: THE ABOVE-NAMED DEFENDANT:

YOU ARE HERBY SUMMONED and required to answer the Complaint in this action of which a copy is herewith served upon you and to serve a copy of your Answer to the said Complaint on the subscriber at their office, 2530 Devine Street, Third Floor, Columbia South Carolina 29205, within thirty (30) days from the date of service hereof, exclusive of the date of such service; and if you fail to answer the Complaint within the time aforesaid, judgment by default will be rendered against you for the relief demanded in the Complaint.

SMITH ROBINSON, LLC

*s/Jonathan M. Robinson*
G. Murrell Smith, Jr.
**Jonathan M. Robinson**
Frederick N. Hanna, Jr.
2530 Devine Street, Third Floor
Columbia, SC 29205
(803)254-5445

*Attorneys for Plaintiffs*

January 10, 2023

ELECTRONICALLY FILED - 2023 Jan 10 11:08 AM - EDGEFIELD - COMMON PLEAS - CASE#2023CP1900010

| | | |
|---|---|---|
| STATE OF SOUTH CAROLINA | ) | IN THE COURT OF COMMON PLEAS |
| | ) | |
| COUNTY OF EDGEFIELD | ) | C/A NO.: |
| | ) | |
| Titan Farms, LLC, Carr Farms, Inc., Titan | ) | |
| Peach Farms, Inc., Chalmers Carr, and | ) | |
| Lori Anne Carr | ) | |
| | ) | |
|    Plaintiffs, | ) | |
| vs. | ) | **COMPLAINT** |
| | ) | **(Jury Trial Demanded)** |
| PGIM Real Estate Finance, LLC, | ) | |
| | ) | |
|    Defendant. | ) | |
| | ) | |

COME NOW Plaintiffs Titan Farms, LLC, Carr Farms, Inc., Titan Peach Farms, Inc., Chalmers Carr, and Lori Anne Carr (collectively, "Plaintiffs" or "Titan") complaining of the Defendant PGIM Real Estate Finance, LLC ("Defendant" or "PGIM"), and would allege and respectfully show unto this Honorable Court as follows:

## <u>INTRODUCTION</u>

1.  This is an action to recover damages Titan incurred due to PGIM's wrongful conduct while negotiating a potential loan transaction.

2.  During over a year of negotiations, PGIM consistently represented the terms upon which it would loan money to Titan.  On October 31, 2022, PGIM provided Titan a term sheet that aligned with the negotiations up to that point.  Enticed by PGIM's representations, Titan executed the term sheet and paid PGIM $875,000 in loan application fees.  PGIM has never executed or signed this term sheet.

3.  The very next day, with Titan's application fees in its pocket, PGIM presented a different term sheet.  This November 1, 2022 term sheet materially changed Titan's obligations.

Over the course of the next month, PGIM made repeated misrepresentations to Titan about the terms of a potential loan. PGIM's deceitful conduct throughout this period convinced Titan that it could not close a loan with PGIM in the amount and within the time-frame necessary for Titan's business operations.

4.      PGIM's conduct in this case reflects a classic "bait and switch" tactic. PGIM represented that it would loan money to Titan on agreed-upon terms and—immediately after receiving Titan's application fees—then took those terms off the table. South Carolina law permits Titan to recover damages for PGIM's deceitful and wrongful conduct.

## PARTIES AND JURISDICTION

5.      Plaintiff Titan Farms, LLC is a limited liability company, organized under the laws of South Carolina. Titan is a peach growing company. Titan operates farmland in Saluda County, Edgefield County, and Aiken County, South Carolina. Titan's principal place of business is in Edgefield County, South Carolina.

6.      Plaintiff Carr Farms, Inc. is a corporation, organized under the laws of South Carolina.

7.      Plaintiff Titan Peach Farms, Inc. is a corporation, organized under the laws of South Carolina.

8.      Plaintiffs Chalmers Carr and wife Lori Anne Carr are citizens and residents of Edgefield County, South Carolina.

9.      Defendant PGIM Real Estate Finance, LLC is a limited liability company, organized under the laws of Delaware. PGIM is registered to do business in South Carolina and does business in South Carolina.

ELECTRONICALLY FILED - 2023 Jan 10 11:08 AM - EDGEFIELD - COMMON PLEAS - CASE#2023CP1900010

ELECTRONICALLY FILED - 2023 Jan 10 11:08 AM - EDGEFIELD - COMMON PLEAS - CASE#2023CP1900010

10.     This civil action arises out of the acts and/or omissions of PGIM that transpired and occurred in South Carolina.

11.      This Court is the proper venue and has jurisdiction over this civil action and over the parties pursuant to S.C. Code Ann. §§ 36-2-802 and 36-2-803.

## **FACTUAL BACKGROUND**

12.     Titan was formed in 1999 when husband and wife Chalmers and Lori Anne Carr began operating a peach farm in Ridge Spring, South Carolina.

13.     Over the past twenty years, under the leadership of Chalmers and Lori Anne, Titan has become the largest peach grower on the east coast.

14.     Although Titan remains a family operation under the leadership of the Carrs, Titan is a large business that requires substantial capital.  On some instances, to generate the necessary capital, Titan has borrowed money from various lenders ("existing lenders").

15.     Under the terms of Titan's agreements with the existing lenders, Titan owes certain obligations.  For instance, one such obligation requires Titan to buy out a lender's stock option by January 2023.

16.     In 2021, to satisfy its obligations to its existing lenders and meet other operating expenses, Titan began looking for another suitable lender.

17.     In May 2021, Titan and PGIM first discussed the possibility of PGIM lending money to Titan.

18.     Over the course of the next year, Titan and PGIM continued to discuss a possible loan transaction.  In addition to conducting these negotiations over the phone and email, Titan and PGIM representatives met at Titan Farms in Edgefield County on multiple occasions.  Two such meetings at Titan Farms took place on May 12, 2021, and July 12, 2022.

ELECTRONICALLY FILED - 2023 Jan 10 11:08 AM - EDGEFIELD - COMMON PLEAS - CASE#2023CP1900010

19.     On several occasions throughout this period, Titan informed PGIM that it needed to secure the financing in a timely fashion to fulfil its obligations to its existing lenders. Titan specifically told PGIM it needed to close the loan prior to the January 2023 deadline to buyout a lender's stock option. PGIM represented to Titan that it would honor Titan's need to close the loan in this timeframe.

20.     With the January 2023 deadline looming, negotiations between Titan and PGIM ramped up in October 2022.

21.     Titan and PGIM determined that a $70,000,000 loan secured by Titan's real and personal property would be appropriate.

22.     To begin the process of closing the loan, PGIM provided Titan a Final Term Sheet dated October 31, 2022 ("the October 31 Term Sheet"). The October 31 Term Sheet contained terms that were agreeable to Titan and consistent with the representations PGIM had made to Titan over the course of negotiations. The October 31 Term Sheet provided PGIM would loan Titan $70,000,000 evidenced by four promissory notes. The October 31 Term Sheet stated the loan would be secured by Titan's real and personal property. Of particular note, the October 31 Term Sheet provided PGIM would be granted a first priority lien over Titan's leasehold interest in roughly 3,900 acres of farmland in Edgefield County, Saluda County, and Aiken County. Exhibit C to the October 31 Term Sheet identified the leasehold tracts over which PGIM would obtain a first priority lien.

23.     Importantly, the October 31 Term Sheet did not require Titan to obtain estoppel certificates from all landlords for the 85+ leases of real property leased by Titan.

24.     The October 31 Term Sheet did not require Titan to provide PGIM with a pledge of equity interests.

ELECTRONICALLY FILED - 2023 Jan 10 11:08 AM - EDGEFIELD - COMMON PLEAS - CASE#2023CP1900010

25.    The October 31 Term Sheet did not require Titan to provide a recorded memorandum of leases executed by each landlord and Titan.

26.    The October 31 Term Sheet did not contain disclaimer language stating that it was "Not a Contract" and "closing may be conditioned upon satisfaction of additional requirements" imposed by PGIM.

27.    Enticed by these favorable terms—and PGIM's representations that there would be no material changes to the terms of the proposed loan—Titan signed and returned the October 31 Term Sheet on October 31, 2022. Importantly, PGIM has never signed the October 31 Term Sheet.

28.    At the time it executed the October 31 Term Sheet, Titan paid PGIM a $175,000 Application Fee and a $700,000 Standby Fee (collectively, "the Application Fees").

29.    On November 1, 2022, Titan signed a Margin Rate Lock Letter provided by PGIM (hereinafter, "the Rate Lock Letter"). PGIM has never signed the Rate Lock Letter.

30.    Titan would not have paid the Application Fees, executed the October 31 Term Sheet, or signed the Rate Lock Letter if it knew PGIM intended to materially change the terms of the proposed loan.

31.    Within mere hours of receiving $875,000 in Application Fees from Titan, PGIM had prepared an updated Final Term Sheet dated November 1, 2022 ("the November 1 Term Sheet"). The November 1 Term Sheet materially changed the terms of the proposed loan and required Titan to fulfil onerous obligations PGIM had not previously indicated it would require of Titan.

32.    On November 4, 2022, a PGIM representative emailed two copies of the November 1 Term Sheet to Titan CFO James Sparks. One copy was an "executable PDF version," and the

ELECTRONICALLY FILED - 2023 Jan 10 11:08 AM - EDGEFIELD - COMMON PLEAS - CASE#2023CP1900010

other copy was supposedly a "redline version" that would show the differences between the October 31 Term Sheet and the November 1 Term Sheet.

33.     The November 1 Term Sheet included an entire paragraph entitled "Ground Leases" that was not present in the October 31 Term Sheet.  In this paragraph, PGIM required Titan to perform new, substantial obligations with respect to the ground leases Titan held. Specifically, the November 1 Term Sheet required Titan to obtain lessor estoppel agreements from all landlords for the 85+ leases of real property leased by Titan.  The November 1 Term Sheet also required Titan to provide PGIM with "a title insurance policy and/or endorsement that shall insure [PGIM] that no mortgage now or in the future encumbering the fee estate of a ground leased Real Property would, if foreclosed, result in a termination or cancellation of the subject Ground Lease."

34.     The redline version of the November 1 Term Sheet did not reveal all the differences between the October 31 Term Sheet and the November 1 Term Sheet.  The redline version did not reveal the addition of a header on the November 1 Term Sheet that stated: "THE FOLLOWING ARE THE TERMS ON WHICH LENDER WOULD BE WILLING TO RECOMMEND A LOAN TO LENDER'S CORPORATE OFFICES FOR APPROVAL."  The redline version also did not reveal the addition of a paragraph entitled "Not a Contract" that provided:

> LENDER AND BORROWER ACKNOWLEDGE THAT THIS TERM SHEET IS INTENDED TO OUTLINE CERTAIN GENERAL BUSINESS TERMS AND CONDITIONS ON WHICH THE PARTIES WILL CONSIDER ENTERING INTO NEGOITATIONS TO MAKE AND ACCEPT A LOAN, AND IS NOT INTENDED TO BE A BINDING COMMITMENT TO MAKE OR ACCEPT A LOAN.  THE LOAN DOCUMENTS WILL INCLUDE OTHER TERMS AND CONDITIONS NOT SPECIFICALLY IDENTIFIED IN THIS TERM SHEET, AND CLOSING MAY BE CONDITIONED UPON SATISFACTION OF ADDITIONAL REQUIREMENTS.  THE PARTIES AGREE THAT LENDER SHALL NOT BE OBLIGATED TO MAKE AND BORROWER SHALL NOT BE OBLIGATED TO ACCEPT A LOAN UNLESS AND UNTIL LENDER HAS EXECUTED AND DELIVERED TO BORROWER A SEPARATE WRITTEN COMMITMENT LETTER AND BORROWER HAS SATISFIED ANY AND ALL CONDITIONS CONTAINED IN ANY SUCH COMMITMENT, OR

ELECTRONICALLY FILED - 2023 Jan 10 11:08 AM - EDGEFIELD - COMMON PLEAS - CASE#2023CP1900010

LENDER HAS ACCEPTED THE LOAN DOCUMENTS AND FUNDED THE
LOAN AND ALL CONDITIONS TO THE DISBURSEMENT OF SUCH
FUNDING FROM ESCROW SHALL HAVE BEEN SATISFIED.

35.    PGIM represented to Titan that there would be no material changes to the terms of
the loan outlined in the October 31 Term Sheet.  Immediately after enticing Titan to pay $875,000
in Application Fees, however, PGIM reversed course and imposed conditions that it had never
suggested to Titan.

36.    After receiving the November 1 Term Sheet, Titan informed PGIM that it would
be extremely difficult for Titan to perform the new obligations PGIM imposed—much less to
perform these obligations in the time necessary to close the loan prior to the January 2023 buyout.

37.    Titan informed PGIM that it had several times in the past attempted to obtain
estoppels from the landlords, without any success.  Titan explained that any loan provision
requiring the cooperation of its many landlords would be practically impossible to obtain, based
on past experience.

38.    In response to Titan's concerns, PGIM indicated it would accept a pledge of equity
interests by those Titan Parties holding the leases as a viable alternative to the estoppels and
indicated another a revised term sheet would be forthcoming.

39.    Subsequently, PGIM submitted another Final Term Sheet to Titan dated November
29, 2022 ("the November 29 Term Sheet").  Contrary to PGIM's representations in response to
Titan's concerns about the November 1 Term Sheet, the November 29 Term Sheet imposed
*additional* obligations on Titan.

40.    The November 29 Term Sheet still included the requirement that Titan obtain
estoppels from all its landlords.  Additionally, the November 29 Term Sheet required a pledge of
equity from any Titan entity that holds real property leases and a recorded memorandum of leases
executed by each landlord and the appropriate Titan entity.

ELECTRONICALLY FILED - 2023 Jan 10 11:08 AM - EDGEFIELD - COMMON PLEAS - CASE#2023CP1900010

41.     PGIM's inclusion of these provisions in the November 29 Term Sheet—after PGIM had represented it would soften the ground lease requirements—confirmed Titan's suspicions that PGIM had included favorable terms in the October 31 Term Sheet only to entice Titan into paying $875,000 in Application Fees.

42.     PGIM's continued bad faith negotiations further confirmed that PGIM would not make good on its representation to close the loan in the time frame identified by Titan.

43.     On December 2, 2022, Titan CFO James Sparks sent a letter to PGIM representative Charlie Hurst.  In his letter, Sparks explained Titan's dissatisfaction with PGIM, particularly in light of Titan's repeated indications to PGIM that "Titan hoped to close by year end."  Sparks notified PGIM that Titan was rescinding its offer to borrow money from PGIM as set forth in the October 31 Term Sheet and the Rate Lock Letter.  Sparks explained such rescission was proper because PGIM had not executed either the October 31 Term Sheet or the Rate Lock Letter.  Sparks also requested that PGIM provide a full refund of the $875,000 in Application Fees Titan had paid PGIM.

44.     Rather than complying with Titan's request, PGIM responded by providing Titan with yet another term sheet on December 5, 2022 ("the December 5 Term Sheet").

45.     The December 5 Term Sheet was still inconsistent with the original October 31 Term Sheet.

46.     Faced with the looming January 2023 buyout, Titan has made every effort to mitigate its damages while PGIM wrongfully withholds more than $800,000 of Titan's funds.

47.     PGIM's wrongful conduct has proximately caused substantial damages to Titan, for which Titan is entitled to recover actual and punitive damages.

ELECTRONICALLY FILED - 2023 Jan 10 11:08 AM - EDGEFIELD - COMMON PLEAS - CASE#2023CP1900010

## FOR A FIRST CAUSE OF ACTION
### (Unfair Trade Practices Act)

48.    Plaintiffs re-allege and incorporate by reference all the preceding paragraphs with the same force and effect as if fully set forth herein.

49.    Section 39-5-20(a) of the South Carolina Unfair Trade Practices Act provides that "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are . . . unlawful."

50.    Section 39-5-140(a) of the South Carolina Unfair Trade Practices Act authorizes recovery whenever a plaintiff has suffered "any ascertainable loss of money or property . . . as a result of the use or employment by another person of an unfair or deceptive method, act or practice."

51.    The South Carolina Unfair Trade Practices Act sets forth the elements of a cause of action, which include: (1) the opposing party engaged in an unlawful trade practice; (2) the plaintiff suffered actual, ascertainable damages as a result of the opposing party's use of the unlawful trade practice, and (3) the unlawful trade practice had an adverse impact on the public interest.

52.    PGIM has engaged in unlawful trade practice acts.

53.    Specifically, PGIM acted in a deceitful manner by enticing Titan to pay the Application Fees and then materially changing the terms of the proposed loan.

54.    Plaintiffs have suffered actual, ascertainable damages as a direct and proximate result of the actions of PGIM.

55.    PGIM's unlawful trade practices have had an adverse impact on the public interest and the interests of Plaintiffs, by diminishing the public trust in PGIM—a large commercial lender—to negotiate loan transactions in a reasonable and forthright manner.

ELECTRONICALLY FILED - 2023 Jan 10 11:08 AM - EDGEFIELD - COMMON PLEAS - CASE#2023CP1900010

56.    Based on the deceptive actions by PGIM, in the way it negotiated the terms of a proposed loan, accepted the Application Fees, and then materially changed the terms of the loan, Plaintiffs are entitled to recover actual, punitive, and treble damages in an amount to be proven at trial and attorney's fees.

## FOR A SECOND CAUSE OF ACTION
### (Negligent Misrepresentation)

57.    Plaintiffs re-allege and incorporate by reference all the preceding paragraphs with the same force and effect as if fully set forth herein.

58.    A negligent misrepresentation arises whenever: "(1) the defendant made a false representation to the plaintiff; (2) the defendant had a pecuniary interest in making the statement; (3) the defendant owed a duty of care to see that he communicated truthful information to the plaintiff; (4) the defendant breached that duty by failing to exercise due care; (5) the plaintiff justifiably relied on the representation; and (6) the plaintiff suffered a pecuniary loss as the proximate result of his reliance upon the representation." *West v. Gladney*, 341 S.C. 127, 133-34, 533 S.E.2d 334, 337 (Ct. App. 2000).

59.    PGIM represented to Plaintiffs that the terms of the proposed loan set forth in the October 31 Term Sheet would not materially change. This representation was clearly false, as PGIM materially changed the terms of the proposed loan immediately after receiving the Application Fees.

60.    PGIM had a duty of care to provide truthful and accurate information to Plaintiffs regarding the terms of the proposed loan.

61.    PGIM breached this duty of care by providing Plaintiffs with terms of a loan that PGIM had no intention of keeping and misleading Plaintiffs to believe the terms of the October 31 Term Sheet.

ELECTRONICALLY FILED - 2023 Jan 10 11:08 AM - EDGEFIELD - COMMON PLEAS - CASE#2023CP1900010

62.     Plaintiffs justifiably relied on this representation from PGIM, ultimately to Plaintiffs' determinant.  Specifically, Plaintiffs reasonably believed that they would enter into a loan transaction consistent with the terms of the October 31 Term Sheet.  These representations, wholly relied upon by Plaintiffs, were false, and PGIM failed to accurately represent the terms of the loan.

63.     Plaintiffs suffered a pecuniary loss proximately caused by their reliance upon PGIM's representation.  For certain, Plaintiffs would not have paid the Application Fees had PGIM not misrepresented the terms of the loan.

64.     Plaintiffs are entitled to recover actual and punitive damages against PGIM in an amount to be proven at trial.

### FOR A THIRD CAUSE OF ACTION
**(Negligence)**

65.     Plaintiffs re-allege and incorporate by reference all the preceding paragraphs with the same force and effect as if fully set forth herein.

66.     "[N]egligence is the failure to use due care; that degree of care with a person of ordinary prudence and reason would exercise under the same circumstances." *Hart v. Doe*, 261 S.C. 116, 122, 198 S.E.2d 526, 529 (1973).

67.     "To state a cause of action for negligence, the plaintiff must allege facts which demonstrate the concurrence of three elements: (1) a duty of care owed by the defendant; (2) a breach of that duty by negligent act or omission; and (3) damage proximately caused by the breach." *Doe ex rel. Doe v. Batson*, 34 S.C. 316, 322, 548 S.E.2d 854, 857 (2001).

68.     PGIM owed a duty to Plaintiffs to provide truthful and accurate information regarding the terms of the proposed loan.

ELECTRONICALLY FILED - 2023 Jan 10 11:08 AM - EDGEFIELD - COMMON PLEAS - CASE#2023CP1900010

69.     PGIM undertook the duty to accurately provide Plaintiffs with the terms of the loan throughout its negotiations with Plaintiffs.

70.     PGIM breached its duty to Plaintiffs by failing to provide them with accurate information about the loan, as evidenced by PGIM imposing additional loan terms immediately after it received the Application Fees.

71.     As a direct and proximate result of PGIM's breach of duty, Plaintiffs were severely damaged and incurred immense expenses in paying the Application Fees for the original, agreed upon loan terms.  Plaintiffs are therefore entitled to recover from PGIM a sum of money to compensate them for their damages under a general negligence theory.

### FOR A FOURTH CAUSE OF ACTION
**(Fraud)**

72.     Plaintiffs re-allege and incorporate by reference all the preceding paragraphs with the same force and effect as if fully set forth herein.

73.     "In order to prove fraud, the following elements must be shown: (1) a representation; (2) its falsity; (3) its materiality; (4) either knowledge of its falsity or a reckless disregard of its truth or falsity; (5) intent that the representation be acted upon; (6) the hearer's ignorance of its falsity; (7) the hearer's reliance on its truth; (8) the hearer's right to rely thereon; and (9) the hearer's consequent and proximate injury." *Ardis v. Cox*, 314 S.C. 512, 515, 431 S.E.2d 267, 269 (Ct. App. 1993).

74.     PGIM represented that the terms of the proposed loan set forth in the October 31 Term Sheet would not materially change.

75.     PGIM knew that it would not honor the terms set forth in the October 31 Term Sheet, as it immediately changed these terms after receiving the Application Fees.

ELECTRONICALLY FILED - 2023 Jan 10 11:08 AM - EDGEFIELD - COMMON PLEAS - CASE#2023CP1900010

76.     The false information provided to Plaintiffs was a critical part of Plaintiffs' decision to move forward with the loan and pay the Application Fees.

77.     PGIM knew of the falsity of its representations about the terms of the loan because it changed these terms immediately after receiving the Application Fees.

78.     Plaintiffs believed PGIM when PGIM represented that it would not materially change the terms of the loan.  Plaintiffs justifiably relied on PGIM's representations and paid the Application Fees.

79.     Plaintiffs had no knowledge that PGIM would materially change the terms of the loan after receiving the Application Fees.

80.     By reason of the foregoing fraudulent acts, Plaintiffs were injured, and PGIM is liable for compensatory damages, including interest, in an amount to be proven at trial, and for punitive damages.

### FOR A FIFTH CAUSE OF ACTION
**(Quantum Meruit)**

81.     Plaintiffs re-allege and incorporate by reference all the preceding paragraphs with the same force and effect as if fully set forth herein.

82.     Quantum Meruit is an equitable doctrine allowing recovery for unjust enrichment, which has occurred in this case.

83.     "Absent an express contract, recovery under quantum meruit is based on quasi-contract, the elements of which are: (1) a benefit conferred upon the defendant by the plaintiff; (2) realization of that benefit by the defendant; and (3) retention by the defendant of the benefit under conditions that make it unjust for him to retain it without paying its value." *Columbia Wholesale Co., Inc. v. Scudder May N.V.*, 312 S.C. 259, 261, 440 S.E.2d 129, 130 (1994).

84.     Plaintiffs conferred a benefit upon PGIM by paying the Application Fees for the original, agreed upon loan.

85.     PGIM was aware of the benefit that it received through the fees that were paid by Plaintiffs, and PGIM failed to honor its representation that it would not materially change the terms of the loan as set forth in the October 31 Term Sheet.

86.     PGIM's retention of the Application Fees is inequitable and accordingly PGIM is obligated to pay damages for its actions.

87.     PGIM is liable to Plaintiffs for compensatory damages, including interest, in an amount to be proven at trial, to reduce PGIM of its unjust enrichment.

**FOR A SIXTH CAUSE OF ACTION**
**(Promissory Estoppel)**

88.     Plaintiffs re-allege and incorporate by reference all the preceding paragraphs with the same force and effect as if fully set forth herein.

89.     PGIM promised it would not materially change the terms of the loan as set forth in the October 31 Term Sheet.

90.     Plaintiffs reasonably relied upon the promise PGIM made regarding the terms of the loan.

91.     The reliance by Plaintiffs on the promises made was expected and foreseeable by PGIM.

92.     As the direct and proximate result of the promise made by PGIM and the reliance by Plaintiffs thereon, Plaintiffs sustained significant monetary damages.

93.     Therefore, PGIM is liable to Plaintiffs for compensatory damages, including interest, in an amount to be proven at trial, and for punitive damages.

ELECTRONICALLY FILED - 2023 Jan 10 11:08 AM - EDGEFIELD - COMMON PLEAS - CASE#2023CP1900010

ELECTRONICALLY FILED - 2023 Jan 10 11:08 AM - EDGEFIELD - COMMON PLEAS - CASE#2023CP1900010

## FOR A SEVENTH CAUSE OF ACTION
### (Conversion)

94.    Plaintiffs re-allege and incorporate by reference all the preceding paragraphs with the same force and effect as if fully set forth herein.

95.    "A claim for conversion can be based on an unauthorized detention of property, after demand. To prevail on a conversion action, the plaintiff must show either title or right to the possession of the property at the time of conversion." *Peters v. K-Mart Corp.*, 318 S.C. 164, 167, 456 S.E.2d 425, 427 (Ct. App. 1995) (*overruled on other grounds*).

96.    Conversion is essentially the unauthorized assumption and exercise of the right of ownership over the goods or personal chattels of another, to the alteration or exclusion of the owner's own rights. *See Castell v. Stephenson Fin. Co.*, 244 S.C. 45, 135 S.E.2d 311 (1964).

97.    Plaintiffs are the lawful owners of the $875,000 in Application Fees paid to PGIM.

98.    PGIM accepted payment of the Application Fees after representing to Plaintiffs that the terms of the loan set forth in the October 31 Term Sheet would not materially change. Immediately thereafter, PGIM materially changed the terms of the proposed loan transaction.

99.    By retaining the Application Fees and refusing to honor the terms of the October 31 Term Sheet, PGIM has assumed and exercised rights over the property that belongs to Plaintiffs.

100.    This conduct arises to a conversion of Plaintiff's property under the law of South Carolina.

101.    Plaintiffs have suffered actual damages from this conversion and will continue to suffer damages if PGIM is not instructed by the Court to return the Application Fees.

**WHEREFORE**, Plaintiffs demand and pray as follows:

1.    That this Honorable Court award Plaintiffs actual, punitive, and treble damages;

ELECTRONICALLY FILED - 2023 Jan 10 11:08 AM - EDGEFIELD - COMMON PLEAS - CASE#2023CP1900010

2.      That this Honorable Court award Plaintiffs their reasonable attorney's fees and all litigation expenses incurred in bringing this action;

3.      That this Honorable Court hold a jury trial on all issues so triable; and

4.      That this Honorable Court award Plaintiffs such other and further relief as is just and proper.

SMITH ROBINSON, LLC

*s/Jonathan M. Robinson*
G. Murrell Smith, Jr.
**Jonathan M. Robinson**
Frederick N. Hanna, Jr.
2530 Devine Street, Third Floor
Columbia, SC 29205
(803)254-5445

*Attorneys for Plaintiffs*

January 10, 2023

ELECTRONICALLY FILED - 2023 Jan 10 11:08 AM - EDGEFIELD - COMMON PLEAS - CASE#2023CP1900010

STATE OF SOUTH CAROLINA

COUNTY OF EDGEFIELD

VERIFICATION

The undersigned, duly authorized on behalf of Titan Farms, LLC, Carr Farms, Inc., Titan Peach Farms, Inc., and being duly sworn, states that he has read the foregoing Complaint and knows the contents thereof; that the same is true of their own knowledge, except matters therein stated to be alleged on information and belief; and to those matters they believe them to be true.

Titan Farms, LLC, Carr Farms, Inc., Titan
Peach Farms, Inc.
By: Chalmers Carr

SWORN to and subscribed before me
this ___10th___ day of January 2023.

Notary Public for South Carolina
My Commission Expires: 9.13.2032

STATE OF SOUTH CAROLINA

COUNTY OF EDGEFIELD

**VERIFICATION**

    Chalmers Carr, being duly sworn, says that he is a Plaintiff herein, and has read the foregoing Complaint and knows the contents thereof; that the same is true of his own knowledge, except matters therein stated to be alleged on information and belief; and to those matters he believes them to be true.

_____
Chalmers Carr

SWORN to and subscribed before me
this ___10th___ day of January 2023.

_____
Notary Public for South Carolina
My Commission Expires:  9/13/2032


STATE OF SOUTH CAROLINA

COUNTY OF EDGEFIELD

**VERIFICATION**

    Lori Anne Carr, being duly sworn, says that he is a Plaintiff herein, and has read the foregoing Complaint and knows the contents thereof; that the same is true of his own knowledge, except matters therein stated to be alleged on information and belief; and to those matters he believes them to be true.

_____
Lori Anne Carr

SWORN to and subscribed before me
this ___10th___ day of January 2023.

_____
Notary Public for South Carolina
My Commission Expires:  9/13/2032

ELECTRONICALLY FILED - 2023 Jan 10 11:08 AM - EDGEFIELD - COMMON PLEAS - CASE#2023CP1900010

ELECTRONICALLY FILED - 2023 Jan 24 10:36 AM - EDGEFIELD - COMMON PLEAS - CASE#2023CP1900010

| | |
|---|---|
| STATE OF SOUTH CAROLINA | IN THE COURT OF COMMON PLEAS |
| COUNTY OF EDGEFIELD | C/A NO.:  2023-CP-19-00010 |

Titan Farms, LLC, Carr Farms, Inc., Titan
Peach Farms, Inc., Chalmers Carr, and Lori
Anne Carr,

                    Plaintiffs,

vs.

PGIM Real Estate Finance, LLC,

                    Defendant.

**AFFIDAVIT OF SERVICE BY
CERTIFIED MAIL**

       The undersigned paralegal for Jonathan M. Robinson, attorney for Plaintiffs Titan Farms,

LLC, Carr Farms, Inc., Titan Peach Farms, Inc., Chalmers Carr, and Lori Anne Carr, does hereby

certify that the Summons and Complaint was served upon Defendant PGIM Real Estate Finance,

LLC, by serving its Registered Agent, CT Corporation System, on January 13, 2023, as evidenced

by this Affidavit of Service and attached certified mail receipt.

Dot Faulkenberry, Paralegal
SMITH ROBINSON, LLC
2530 Devine Street, Third Floor
Columbia, SC 29205

SWORN to before me on
January 24ᵀᴹ, 2023

Name: Leslie Davis
Notary Public for South Carolina
My Commission Expires: 2/5/23

UNITED STATES POSTAL SERVICE

First-Class Mail
Postage & Fees Paid
USPS
Permit No. G-10

• Sender: Please print your name, address, and ZIP+4® in this box •

0100-0280

Dot Faulkenberry
Smith-Robinson, LLC
2530 Devine Street, 3rd Floor
Columbia, SC 29205

RECEIVED
JAN 17 2022
BY 0100-0280
JmR/df

9290 9969 0099 9745 9264 96

ELECTRONICALLY FILED - 2023 Jan 24-10:36 AM - EDGEFIELD - COMMON PLEAS - CASE#2023CP1900010

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

9214 7899 0099 9790 1645 9264 89

1. Article Addressed to:

PGIM Real Estate Finance, LLC
c/o CT Corporation System, Registered Agent
2 Office Park Court, Suite 103
Columbia, SC 29223

2. Article Number (Transfer from service label) 9264 96

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X                                    ☐ Agent
                                     ☐ Addressee

B. Received by (Printed Name)        C. Date of Delivery
                                     1-13-23

D. Is delivery address different from Item 1?  ☐ Yes
   If YES enter delivery address below:         ☐ No

3. Service Type
☐ Adult Signature
☐ Adult Signature Restricted Delivery
☐ Certified Mail®
☐ Certified Mail Restricted Delivery
☐ Collect on Delivery
☐ Collect on Delivery Restricted Delivery
☐ Insured Mail
☐ Insured Mail Restricted Delivery (over $500)
☐ Priority Mail Express®
☐ Registered Mail™
☐ Registered Mail Restricted Delivery
☐ Return Receipt for Merchandise
☐ Signature Confirmation™
☐ Signature Confirmation Restricted Delivery

PS Form 3811, July 2015 PSN 7530-02-000-9053        Domestic Return Receipt

ELECTRONICALLY FILED - 2023 Feb 09 4:33 PM - EDGEFIELD - COMMON PLEAS - CASE#2023CP1900010

STATE OF SOUTH CAROLINA          )     IN THE COURT OF COMMON PLEAS
                                 )
COUNTY OF EDGEFIELD              )     ELEVENTH JUDICIAL CIRCUIT

---

## ORDER OF PROTECTION

---

This matter is before the court on the request of Jonathan M. Robinson of Smith Robinson Holler DuBose and Morgan, LLC, for protection from all court appearances in the Court of Common Pleas from February 23 - 24, 2023 and March 6 - 10, 2023 for planned family vacations.

Therefore, it is ordered that Jonathan M. Robinson be protected from any and all court appearances during the time period  February 23-24, 2023 and March 6 – 10, 2023.

AND IT IS SO ORDERED.

**Edgefield County Cases:**

Titan Farms, LLC, et al v. PGIM Real Estate Finance, LLC – (2023-CP-19-00010)





Edgefield Common Pleas

**Case Caption:**    Titan Farms, Llc , plaintiff, et al VS   Pgim Real Estate Finance, Llc

**Case Number:**    2023CP1900010

**Type:**    Order/Protection from Court Appearance

So Ordered

Debra R. McCaslin

Electronically signed on 2023-02-09 15:17:47    page 2 of 2